1 | MARK D. LONERGAN (State Bar No. 143622)
MICHAEL J. STEINER (State Bar No. 112079)
2 | JON D. IVES (State Bar No. 230582)
jdi@severson.com
3 | SEVERSON & WERSON
A Professional Corporation
4 | One Embarcadero Center, Suite 2600
San Francisco, CA 94111
5 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439
6 |
Attorneys for Defendants
7 | Wells Fargo & Co. and Wells Fargo Bank,
N.A. (sued also as Wells Fargo Home
8 | Mortgage, Inc.)

9 |

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13 |

| | |
|---|---|
| 14   KEITH AND YING FORSTER, *et al.*, | Case No.: C10-05321 RS |
| 15        Plaintiffs, | **WELLS FARGO & CO. AND WELLS FARGO BANK, N.A.'S NOTICE OF HEARING ON MOTION; MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 16        vs. | |
| 17   WELLS FARGO & CO., WELLS FARGO HOME MORTGAGE, INC., AND WELLS FARGO BANK, | |
| 18   N.A. D/B/A AMERICA'S SERVICING COMPANY, | Date:       March 31, 2011 Time:       1:30 P.M. |
| 19        Defendants. | Dept.       Courtroom 3, Fl. 17 Judge:      Hon. Richard Seeborg |
| 20 | |
| 21 | Complaint filed: November 23, 2010 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ..................................................................................................... ix

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION ..................................................................................... 1

II.     APPLICABLE LAW AND PERTINENT FACTS ................................. 3

III.    FACTS SHOWING CAUSATION OR DAMAGES ARE OMITTED FROM THE COMPLAINT ................................................ 5

IV.    ONLY THE CALIFORNIA PLAINTIFFS HAVE ANY POTENTIAL CLAIMS UNDER CALIFORNIA LAW ...................... 7

V.     AN AGENT OF A PARTY TO A CONTRACT CANNOT INDUCE ITS BREACH ................................................................. 9

VI.    THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING APPLIES ONLY TO THE PARTIES TO A CONTRACT AND CANNOT BE BASED ON A TORT THEORY .................................................. 12

       A.    Plaintiffs Have No Contract-Based Claim ......................... 13

             1.     ASC is not a Party to the Contracts ...................... 13

             2.     Any Contract-Based Claim is Insufficiently Pleaded ............................. 13

       B.    Plaintiffs Have No Tort-Based Claim ................................. 14

VII.   EQUITABLE ESTOPPEL IS NOT A CAUSE OF ACTION ............ 15

       A.    Equitable Estoppel Is Not A Cause Of Action ................. 15

       B.    By Intentionally Defaulting, Plaintiffs Cannot Invoke Equity ............................ 15

VIII.  UNJUST ENRICHMENT IS NOT A CAUSE OF ACTION ............ 16

       A.    Unjust Enrichment Is Not A Cause Of Action ................. 17

       B.    As The Late Fees Were Governed By Express Contract, No Quasi-Contractual Relief Lies ................. 17

IX.    PLAINTIFFS HAVE NO VIABLE UCL CLAIM ........................... 17

       A.    Only The California Plaintiffs Have Any Potential Claim UCL Claim ............... 18

       B.    Plaintiffs Have Not Alleged Facts Showing Causation Or Reliance ................... 18

       C.    Plaintiffs Have Not Alleged Facts Showing They Have Any Restitution Remedy Under The UCL ................. 19

-i-

D.      There Is No Underlying Unlawful Act To Support A Derivative "Unlawful Prong" UCL Claim ............................................................20

E.      Plaintiffs Have Not Alleged The Violation Of A Specific Constitutional Provision, Statute, Or Regulation To Support An "Unfair Prong" Claim .............................................................................21

F.      Plaintiffs Have Not Sufficiently Pleaded Fraud Or Reliance To Support A "Fraud Prong" Claim.............................................................23

X.      DEFENDANT WELLS FARGO & CO. SHOULD BE DISMISSED ...........................24

XI.     CONCLUSION ...........................................................................................25

MOTION TO DISMISS
Case No.:  CV10-05321

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abat v. Chase Bank USA, N.A.*,
— F. Supp. 2d —, 2010 WL 3632809 (C.D. Cal. 2010)...........................................................8

*Abogados v. AT&T, Inc.*,
223 F.3d 932 (9th Cir. 2000) .................................................................................................8

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .......................................................................................................3, 4

*Audler v. CBC Innovis Inc.*,
519 F.3d 239 (5th Cir. 2008) ................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................3

*Benito v. Indymac Mortg. Servs.*,
2010 WL 2130648 (D. Nev. 2010) .....................................................................................14

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
685 F. Supp. 2d 1094 (E.D. Cal. 2010) .................................................................................5

*Castaneda v. Saxon Mortg. Servs., Inc.*,
687 F. Supp. 2d 1191 (E.D. Cal. 2009) ...............................................................................15

*Churchill Village, L.L.C. v. Gen. Elec. Co.*,
169 F. Supp. 2d 1119 (N.D. Cal. 2000)...............................................................................21

*Davenport v. Litton Loan Servicing, LP*,
725 F. Supp. 2d 862 (N.D. Cal. 2010)..................................................................................21

*Gipson v. Wells Fargo Corp.*,
2006 WL 763069 (D.D.C. 2006) ...........................................................................................1

*Glenn K. Jackson Inc. v. Roe*,
273 F.3d 1192 (9th Cir. 2001) .............................................................................................20

*Hallas v. Ameriquest Mortg. Co.*,
2005 WL 2044523 (D. Or. 2005)...........................................................................................9

*In re Glenfed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ...............................................................................................23

*In re Mortg. Lenders Network USA, Inc.*,
406 B.R. 213 (Bankr. D. Del. 2009) ....................................................................................11

-iii-

*In re NVIDIA GPU Litig.*,
   2009 WL 4020104 (N.D. Cal. 2009) ...................................................................8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .........................................................................23

*Lawrence v. Aurora Loan Services LLC*,
   2010 WL 364276 (E.D. Cal. 2010) ............................................................. *passim*

*Lingad v. Indymac Fed. Bank*,
   682 F. Supp. 2d 1142 (E.D. Cal. 2010) ...........................................................13

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ...........................................................................21

*Morris v. BMW of N. Am., LLC*,
   2007 WL 3342612 (N.D. Cal. 2007) ................................................................23

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .............................................................................4

*Mount v. Wells Fargo Bank, N.A.*,
   2008 WL 5046286 (C.D. Cal. 2008) ..................................................................1

*Mullis v. United States Bankruptcy Ct.*,
   828 F.2d 1385 (9th Cir. 1987) ...........................................................................4

*Nguyen v. BAC Home Loans Servs., LP*,
   2010 WL 3894986 (N.D. Cal. 2010) ..............................................................4, 6

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ...........................................................................17

*Pension Trust Fund v. Fed. Ins. Co.*,
   307 F.3d 944 (9th Cir. 2002) ...........................................................................14

*Quach v. Citimortgage Inc.*,
   2010 WL 3211937 (N.D. Cal. 2010) ................................................................11

*Quintero Family Trust v. OneWest Bank, F.S.B.*,
   2010 WL 392312 (S.D. Cal. 2010) ...................................................................14

*Sanchez v. Bear Stearns Residential Mortg. Corp.*,
   2010 WL 1911154 (S.D. Cal. 2010) .................................................................22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .........................................................................23

*Sipe v. Countrywide Bank*,
   690 F. Supp. 2d 1141 (E.D. Cal. 2010) ...........................................................13

-iv-

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................. 4

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ......................................................................................... 4

*Thiel v. GMAC Mortg., LLC*,
   2010 WL 3505087 (E.D. Cal. 2010) ................................................................ 14

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ........................................................................................... 24

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................... 23

*Walker v. USAA Cas. Ins. Co.*,
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) ........................................................... 17

*Wright v. Bank of Am., N.A.*,
   2010 WL 2889117 (N.D. Cal. 2010) .................................................................. 6

*Zlotnik v. U.S. Bancorp*,
   2009 WL 5178030 (N.D. Cal. 2009) ................................................................ 21

*Zoher v. Chase Home Fin.*,
   2010 WL 4064798 (S.D. Fla. 2010) ................................................................... 4

**STATE CASES**

*Alch. v. Sup. Ct.*,
   122 Cal. App. 4th 339 (2004) ......................................................................... 22

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal.4th 503 (1994) ................................................................................ 10, 12

*Bailey v. Outdoor Media Group*,
   155 Cal. App. 4th 778 (2007) ......................................................................... 15

*Bionghi v. Metro Water Dist.*,
   70 Cal. App. 4th 1358 (1999) ......................................................................... 14

*Camacho v. Auto. Club of S. Cal.*,
   142 Cal. App. 4th 1394 (2006) ....................................................................... 21

*Careau & Co. v. Security Pac. Bus. Credit*,
   222 Cal. App. 3d 1371 (1990) ........................................................................ 14

*Commc'ns., Inc. v. Los Angeles Cellular Tele. Co.*,
   20 Cal.4th 163 (1999) ..................................................................................... 21

*Current, Inc. v. State Bd. of Equalization,*
   24 Cal. App. 4th 382 (1994) ..................................................................24

*Davis v. Ford Motor Credit Co.,*
   179 Cal. App. 4th 581 (2009) ................................................................23

*Davis v. Nadrich,*
   174 Cal. App. 4th 1 (2009) ....................................................................10

*Day v. AT&T,*
   63 Cal. App. 4th 325 (1998) ..................................................................19

*Green v. Travelers Indem. Co.,*
   185 Cal. App. 3d 544 (1986) ..................................................................15

*Gregory v. Albertson's, Inc.,*
   104 Cal. App. 4th 845 (2002) ................................................................22

*Guz v. Bechtel Nat'l Inc.,*
   24 Cal.4th 317 (2000)............................................................................13

*Hall v. Time,*
   158 Cal. App. 4th 847 (2008) ................................................................18

*Harris v. Wachovia Mortg., F.S.B.,*
   185 Cal. App. 4th 1018 (2010) ..............................................................14

*In re Tobacco II Cases,*
   46 Cal.4th 298 (2009)............................................................................23

*Ingels v. Westwood One Broad. Servs., Inc.,*
   129 Cal. App. 4th 1050 (2005) ..............................................................20

*Jenkins v. Inglewood Unified Sch. Dist.,*
   34 Cal. App. 4th 1388 (1995) ..........................................................10, 11

*Jogani v. Sup. Ct.,*
   165 Cal. App. 4th 901 (2008) ................................................................17

*Kendall-Jackson Winery, Ltd. v. Sup. Ct.,*
   76 Cal. App. 4th 970 (1999) ..................................................................16

*Krantz v. BT Visual Images, L.L.C.,*
   89 Cal. App. 4th 164 (2001) ..................................................................20

*Kwikset Corp. v. Superior Court,*
   — Cal.4th —, 2011 WL 240278 (2011)..................................................18

*Lazar v. Hertz Corp.,*
   69 Cal. App. 4th 1494 (1999) ................................................................20

-vi-

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) ........................................................................ 17

*McClain v. Octagon Plaza, LLC*,
  159 Cal. App. 4th 784 (2008) ........................................................................ 13

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ........................................................................ 17

*Mintz v. Blue Cross of California*,
  172 Cal. App. 4th 1594 (2009) ............................................................ 10, 11, 12

*Money Store Inv. Corp. v. S. Cal. Bank*,
  98 Cal. App. 4th 722 (2002) .......................................................................... 15

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) ...................................................................... 23

*Nedlloyd Lines v. Super. Ct.*,
  3 Cal.4th 459 (1992).......................................................................................... 9

*Nelson v. Pearson Ford Co.*,
  186 Cal. App. 4th 983 (2010) ........................................................................ 19

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal.3d 1118 (1990)..................................................................................... 10

*Pac. Gas & Elec. Co. v. Zuckerman*,
  189 Cal. App. 3d 1113 (1987) ........................................................................ 15

*People v. Duz-Mor Diagnostic Lab., Inc.*,
  68 Cal. App. 4th 654 (1998) .......................................................................... 20

*PM Group, Inc. v. Stewart*,
  154 Cal. App. 4th 55 (2007) .................................................................... 10, 11

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
  11 Cal. App. 4th 1026 (1992) ........................................................................ 13

*Schnall v. Hertz Corp.*,
  78 Cal. App. 4th 1144 (2000) ........................................................................ 22

*Scripps Clinic v. Sup. Ct.*,
  108 Cal. App. 4th 917 (2003) ........................................................................ 21

*Shoemaker v. Myers*,
  52 Cal.3d 1 (1990).................................................................................... 10, 11

*Smith v. City & County of San Francisco*,
  225 Cal. App. 3d 38 (1990) ............................................................................ 13

-vii-

*State Farm Fire & Cas. Co. v. Sup. Ct.*,
    45 Cal. App. 4th 1093 (1996) ........................................................................ 21

*Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    118 Cal. App. 4th 1061 (2004) ..................................................................... 22

*Unzipped Apparel, LLC v. Sweet Sportswear, LLC*,
    2010 WL 2677441 (Cal. Ct. App. 2010) ....................................................... 10

*Vu v. California Commerce Club, Inc.*,
    58 Cal. App. 4th 229 (1997) ........................................................................... 5

*Wal-Noon Corp. v. Hill*,
    45 Cal. App. 3d 605 (1975) .......................................................................... 17

*Walker v. Countrywide Home Loans, Inc.*,
    98 Cal. App. 4th 1158 (2002) ....................................................................... 11

*Waller v. Truck Ins. Exch., Inc.*,
    11 Cal.4th 1 (1995) ...................................................................................... 13

*Wash. Mut. Bank, F.A. v. Super. Ct.*,
    24 Cal.4th 906 (2001)..................................................................................... 8

**FEDERAL RULES & STATUTES**

Federal Rule of Civil Procedure
    Rule 9 ........................................................................................................... 23
    Rule 12......................................................................................................... 1, 3, 4

United States Code
    28 U.S.C. § 1332............................................................................................ 8

**STATE STATUTES**

Business & Professions Code
    § 17200 ................................................................................................. *passim*
    § 17204 ......................................................................................................... 18

**OTHER AUTHORITIES**

2 CAL. AFFIRMATIVE DEF. § 34:1 (2010 ed.)...................................................... 15

Restatement (Second) of Conflicts of Laws § 187(2)............................................ 8

-viii-

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2         PLEASE TAKE NOTICE that on March 31, 2011, at 1:30 P.M., or as soon thereafter as

3   counsel may be heard in Courtroom 3, Floor 17, of the above-entitled Court, located at 450

4   Golden Gate Avenue, California 94102, before the Honorable Richard Seeborg, defendants Wells

5   Fargo & Co. and Wells Fargo Bank, N.A. (sued also as Wells Fargo Home Mortgage, Inc.) will,

6   and hereby do, move to dismiss plaintiffs Keith and Ying Foster, *et al.*'s Complaint pursuant to

7   Federal Rule of Civil Procedure 12(b)(6).  The Complaint fails to state a claim upon which relief

8   may be granted as explained further in the accompanying memorandum of points and authorities.

9         This motion is based on this motion and notice of motion, the accompanying

10   memorandum of points and authorities, the request for judicial notice, the pleadings and records

11   on file in this action, and any further briefs, evidence, authorities, or argument presented before or

12   at the hearing of this motion.  The defendants respectfully request an order dismissing the

13   Complaint for failure to state a claim.

14

15   DATED:  February 7, 2011                    SEVERSON *&* WERSON
                                                  A Professional Corporation
16

17                                               By: _____/s/___*Jon D. Ives*_____
                                                          Jon D. Ives
18
                                                 Attorneys for Defendants
19                                               Wells Fargo & Co. and Wells Fargo Bank, N.A.
                                                 (sued also as Wells Fargo Home Mortgage, Inc.)
20

21

22

23

24

25

26

27

28

-ix-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. (the latter sued also as Wells Fargo Home Mortgage, Inc. d/b/a/ America's Servicing Company; collectively, "ASC")[1] respectfully submit this motion to dismiss plaintiffs Keith and Ying Forster, *et al.*'s[2] complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs are mortgage borrowers whose loans were serviced by ASC, and who sought loan modifications from ASC.  Plaintiffs allege that, at the time they sought modifications, they were "current" and in "good standing" on their loans, and had "fully performed" their obligations under their loan agreements.  Plaintiffs never explain why they were seeking loan modifications.

Plaintiffs' primary allegation is that ASC induced them to breach their mortgage loan contracts with the various mortgage note holders by telling plaintiffs that they would not be considered for loan modification unless they were in default.  Based on ASC's representation, plaintiffs claim, they defaulted and they were charge late fees and other fees as a result of their default.  Boiled to its essence, plaintiffs' claim is that:  (1) ASC told plaintiffs that being in default was a requirement for a loan modification; and (2) plaintiffs defaulted.

Critical facts about both one and two are omitted from the complaint.  With respect to the first allegation, plaintiffs ignore the fact that, while being in default is not an absolute requirement, at the very least a borrower must be facing imminent default to qualify for a loan

---

[1] "America's Servicing Company" is a doing business as name for a department of Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.  The Complaint generally refers to the moving defendants as "ASC."  This memorandum will also refer to Wells Fargo Bank, N.A. as "ASC" for ease of reference.  *See, e.g., Mount v. Wells Fargo Bank, N.A.*, 2008 WL 5046286, *1 (C.D. Cal. 2008) ("Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A., not a subsidiary corporation."); *Gipson v. Wells Fargo Corp.*, 2006 WL 763069, *2 (D.D.C. 2006) ("Wells Fargo Home Mortgage, Inc., is no longer an incorporated entity and is now a division of Wells Fargo Bank, N.A.").  Wells Fargo Home Mortgage is not a separate entity from Wells Fargo Bank, N.A.  As will be explained in the final section of this memorandum, Wells Fargo Bank, N.A. or "ASC" should be distinguished from Wells Fargo & Co.

[2] The named plaintiffs are Keith and Ying Forster, Sonya Foster, Gregory McNutt, Wendy Scribner, Michelle Wilkinson, Dana Moody, Florin Moldovan, John Jones and Martine Sonon-Jones, Ralph and Nancy Iannuzzi, Bryan Weisz, Alma Quezada, and Todd and Lisa Phillips.

-1-

1  modification.  As to the second allegation of plaintiffs' default, they never explain how it was

2  caused by the first.

3        There is obviously a step missing here about why plaintiffs defaulted or what caused them

4  to default.  Plaintiffs' default may have followed ASC's purported statement, but if we assume for

5  present purposes only that ASC told plaintiffs that default was an eligibility requirement for loan

6  modifications, this did not itself cause the default.  The immediate cause of the defaults was that

7  plaintiffs ceased repaying their mortgages.

8        There is a reason why the complaint omits these crucial facts.  Two potential explanations

9  exist for plaintiffs' defaults.  Either (1) plaintiffs defaulted because they sought to portray

10 themselves as eligible for loan modifications when they were not, and incurred late charges in a

11 calculated attempt to exploit loan modification programs meant for genuinely struggling

12 homeowners, or (2) they defaulted due to financial hardship.  Plaintiffs never aver one or the

13 other because, if they do, their case collapses.

14       If plaintiffs had the ability to repay their loans as agreed, then they were not qualified for

15 loan modifications.  In that event, plaintiffs stopped making payments in order to falsely posture

16 themselves as eligible for loan modifications.  Or, to put it another way, plaintiffs are strategic

17 defaulters—*i.e.*, borrowers capable of repaying as they agreed, but who elect to default for

18 calculated economic advantage; in this case, to take advantage of loan modification programs

19 designed for homeowners truly unable to make their payments.  Under this scenario, plaintiffs

20 purposely defaulted and therefore knowingly incurred late fees and charges in a calculated gambit

21 to seek better loan terms.  Just as the plaintiffs in *Lawrence v. Aurora Loan Services LLC*, 2010

22 WL 364276, *7 (E.D. Cal. 2010), who "stopped making their loan payments to seek a loan

23 modification," "plaintiff invited the problems they face."

24       If, on the other hand, plaintiffs ceased making payments because they were financially

25 unable to do so, then their defaults were the result of their economic circumstances, not ASC's

26 purported representation about the eligibility requirements of loan modifications under HAMP or

27 other programs.  Plaintiffs' defaults occurred irrespective of anything ASC did.

28

-2-

1    Because plaintiffs omit the cause of their defaults from their complaint, plaintiffs have not

2    alleged facts showing causation or damages.

3    Another problem faced by most of the plaintiffs is that they cannot seek relief under

4    California law.  All plaintiffs signed deeds of trusts or mortgages designating the law of the state

5    where the secured properties are located as the governing law.  Only three of the plaintiffs have

6    secured property in California.  The rest have secured properties scattered across the country.

7    Each particular cause of action is faulty for other reasons.  For instance, plaintiffs

8    maintain that ASC induced them to breach their mortgage contracts.  But, as a loan servicer, ASC

9    was an agent to a party to the contracts; namely, the loan owners.  Neither a party to a contract,

10   nor that party's agent, can be liable for inducing breach of their own contract.

11   Plaintiffs also allege ASC breached the implied covenant of good faith and fair dealing of

12   the mortgage contracts.  This implied covenant, however, applies only to those directly a party to

13   the contract.  Moreover, a tort theory (here fraudulent inducement) will not support this cause of

14   action outside the context of insurance contracts.

15   Plaintiffs put forward two claims—for equitable estoppel and unjust enrichment—which

16   are not theories of recovery at all.

17   And lastly, plaintiffs try to state a claim for relief under Business & Professions Code §

18   17200.  To maintain such a claim a plaintiff must allege facts showing that they relied on the

19   purported unfair competition and that it caused them harm.  Here plaintiffs have avoided any

20   discussion of why they defaulted.  Because they have omitted such facts there is nothing from

21   which to infer reliance or causation.  Even without this obstacle, plaintiffs have not alleged facts

22   showing they are entitled to relief under any prong of section 17200.

23   As plaintiffs have failed to state a claim for relief, defendants respectfully submit that their

24   motion to dismiss should be granted.

25   **II.    APPLICABLE LAW AND PERTINENT FACTS**

26   "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a

27   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

28   plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v.*

-3-

1  *Twombly*, 550 U.S. 544, 570 (2007)); *see also* FED. R. CIV. P. 12(b)(6).  "A claim has facial

2  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3  inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949; *see*

4  *also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  While the Court accepts as true

5  the well-pleaded facts of a complaint when deciding a motion to dismiss, this presumption does

6  not apply to naked assertions devoid of further factual enhancement or conclusory allegations of

7  law.  *See Iqbal*, 129 S. Ct. at 1949-50; *Moss*, 572 F.3d at 969.  Moreover, the complaint must give

8  the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

9  *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 512 (2002).  Finally, facts subject to judicial notice

10  may be considered on a motion to dismiss and these facts trump conclusory allegations to the

11  contrary.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Mullis v.*

12  *United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

13          The alleged and judicially noticeable facts are stated below.  ASC does not concede the

14  truth of any of the facts plaintiffs allege.

15          "[E]ach Plaintiff and member of the Class had performed his or her obligations under the

16  mortgage agreements and were current on his or her monthly mortgage payments" and they were

17  "in good standing" on their loans.  Compl. ¶¶ 49, 53, 66.  Plaintiffs nevertheless sought loan

18  modifications under HAMP[3] or through loan modification programs offered directly by ASC.  *Id.*

19  ¶ 38.  Plaintiffs never allege why they sought modifications.

20          They contend that ASC induced them to breach their loan contracts with the various note

21  holders by telling plaintiffs that they would not be considered for such loan modifications unless

22  they defaulted on their mortgage loans.  *Id.* ¶ 3.  Plaintiffs aver that they "were informed by ASC

23  that they were not eligible for a loan modification unless and until they defaulted on their

24  mortgage payments" "in order to become 'eligible' for a loan modification …."  *Id.* ¶ 28; *see also*

25

26          [3] HAMP is a program created by the U.S. Treasury Department.  *See Nguyen v. BAC Home Loans Servs., LP*, 2010 WL 3894986, *1 (N.D. Cal. 2010); *Zoher v. Chase Home Fin.*, 2010 WL 4064798, *1 (S.D. Fla. 2010).  HAMP provides financial incentives to loan servicers and investors to encourage them to modify existing private mortgages.  *See Nguyen*, 2010 WL 3894986, *1.  The Treasury Department has retained the Federal National Mortgage Association ("Fannie Mae") to administer HAMP.  *See id.*

27

28

-4-

¶¶ 3, 56.  Plaintiffs state that "Under HAMP, there is <u>no</u> requirement that a mortgage borrower be in default in their mortgage payments before they can become eligible for consideration of a loan modification."  *Id*. ¶ 37 (underscoring in original).

Each plaintiff signed a deed of trust or mortgage to secure their loans.  Each deed of trust or similar security instrument provides that "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges *and late charges due* *under the Note*."  RJN, Exs. B – M, § 1 (emphasis added).  Plaintiffs acknowledge that "a borrower's failure to make mortgage payments in the specified amount would constitute a breach of the mortgage agreements …."  Compl. ¶ 55.

### III.    FACTS SHOWING CAUSATION OR DAMAGES ARE OMITTED FROM THE COMPLAINT

Plaintiffs have failed to state any claim for relief for a simple reason.  By omitting critical facts, plaintiffs have not shown that ASC caused them any damage.  Causation and damages are, of course, necessary elements to stating almost any tort or contract claim.  *See generally Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010); *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997).

Plaintiffs never say why they ceased making their loan payments.  There are two potential explanations:  The first (and more likely from what little is alleged in the complaint) is that plaintiffs strategically defaulted in order to appear eligible for loan modifications programs.  Plaintiffs aver that they were "in good standing" on their loans (Compl. ¶¶ 49, 53, 66) and that they "ceded their positions of good standing [on their loans] only as a result of being instructed to do so by Defendants …." (*Id*. ¶ 50).

If plaintiffs could afford their loans and did not have trouble making their payments, then they were not eligible for any loan modification.  Under this scenario, plaintiffs intentionally stopped making their payments in an attempt to reap the benefits of loan modification programs.  Any damages (such as late fees, interest, or charges) resulted from plaintiffs' own actions.  *See, e.g., Lawrence v. Aurora Loan Services LLC*, 2010 WL 364276, *7 (E.D. Cal. 2010) (noting that

-5-

MOTION TO DISMISS
Case No.:  CV10-05321

1    "plaintiff invited the problems they face," when they "stopped making their loan payments to

2    seek a loan modification.").

3        There is an alternative possibility.  This is that plaintiffs defaulted because they lacked the

4    ability to pay due to their financial circumstances.  In this case, plaintiffs' defaults were caused by

5    their financial circumstances and they incurred late fees, charges, and interest due to economic

6    conditions, not because of anything ASC did.  Under this scenario, plaintiffs' default happened

7    irrespective of any representation by ASC.

8        Plaintiffs maintain that ASC's alleged representation about needing to be in default was

9    not accurate because the Home Affordable Modification Program ("HAMP") and other loan

10   modification programs offered by ASC do not require a borrower to be in default to apply.  This

11   is misleading.  One of the eligibility criteria for a HAMP loan modification is that "The mortgage

12   loan is delinquent or default is reasonably foreseeable."  *See* Defs' Request for Judicial Notice

13   ("RJN"), Ex. A[4]; *see also Nguyen v. BAC Home Loans Servs., LP*, 2010 WL 3894986, *2 (N.D.

14   Cal. 2010) (explaining that one of the initial criteria under HAMP is that "the loan is delinquent

15   or an imminent default is reasonably foreseeable."); *Wright v. Bank of Am., N.A.*, 2010 WL

16   2889117, *3 (N.D. Cal. 2010) (same).

17       Moreover, to be considered for a HAMP loan modification, "[a] borrower [must have]

18   documented a financial hardship and represented that he or she does not have sufficient liquid

19   assets to make the monthly mortgage payments."  *See* RJN, Ex. A.  Thus, while it is literally true

20   that a borrower need not be behind on his or her mortgage payments to be eligible for a

21   modification under HAMP, a borrower not in default is only "eligible if they reasonably believe

22   they are very likely to default on their mortgage soon (often referred to by loan servicers as

23   "imminent default").  *Id*. (Frequently Asked Questions No. 22).

24       Plaintiffs never contend they were facing default.  They do not suggest they were

25   experiencing any financial difficulties.  In fact, they never even allege that they were eligible for

26

27   ───────────────────────
         [4] Also available at
28   https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_30.pdf.

07685/0816/877779.1

MOTION TO DISMISS
Case No.:  CV10-05321

1   loan modifications under any program.  If plaintiffs were not in default and were not facing

2   default, then they were not eligible for loan modifications under HAMP.

3       Plaintiffs describe HAMP as meant to help "struggling homeowners get relief and avoid

4   foreclosure."  Compl. ¶ 35.  Quite noticeably, plaintiffs do not claim membership in this group of

5   homeowners.  To the contrary, when plaintiffs sought their loan modifications with ASC, "each

6   Plaintiff and member of the Class had performed his or her obligations under the mortgage

7   agreements and were current on his or her monthly mortgage payments" and they were "in good

8   standing" on their loans.  *Id*. ¶¶ 49, 53, 66.  And, they add that "Plaintiffs and Class members

9   ceded their positions of good standing [on their loans] only as a result of being instructed to do so

10  by Defendants ...."  *Id.* ¶ 50.

11      There is a related omission from the complaint.  While plaintiffs go to great lengths to

12  make clear that they were not in default at the time they sought loan modifications, plaintiffs

13  obfuscate on the issue of whether they faced reasonably foreseeable imminent default.

14  Throughout the pleading there are numerous allegations that ASC stated to plaintiffs that they

15  needed to be in default to apply for a loan modification.  Without explanation, this assertion is

16  abruptly followed by the claim that this "induced" plaintiffs to default or "caused" them to

17  default.

18      But again, merely being told that default is an eligibility requirement for a loan

19  modification program does not "cause" a default and does not cause late fees incurred as a result

20  of defaulting.  Because plaintiffs have left out of their complaint any explanation for why they

21  defaulted, there is nothing to show that ASC caused the damages for which they seek relief.

22  **IV.    ONLY THE CALIFORNIA PLAINTIFFS HAVE ANY POTENTIAL CLAIMS
            UNDER CALIFORNIA LAW**

23

24      There is another reason why nearly all plaintiffs fail to state a claim.  Only three of the

25  plaintiffs purport to be California residents.  These are Keith and Ying Forster and Michelle

26  Wilkinson.  *See* Compl. ¶¶ 12, 16.  The remaining plaintiffs identify themselves as out-of-state

27  residents.  *See id.* ¶¶ 13-15, 17-23.

28

-7-

  
As evidenced by their invocation of a California statute in their fifth cause of action (California Business & Professions Code § 17200), all plaintiffs are seeking relief under California law.  *See id.* ¶ 32 (noting that each plaintiff "must prove the same facts in order to establish the right to obtain relief on the same causes of action."); *see also* ¶ 6 (alleging that defendants' policy and practice was unlawful "under California law.").  But only the California plaintiffs have any potential claims under California law.

Each plaintiff signed a deed of trust or mortgage to secure their loans.  *See* RJN, Exs. B-M.  Each trust deed or similar security instrument contains a choice of law provision stating that "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located."  *See id.* (section 16 of each security instrument).  Only plaintiffs Keith and Ying Forster and Michelle Wilkinson have secured properties in California.  *See* RJN, Exs. B, C.  The secured properties of the other plaintiffs are located in Connecticut, Florida, Idaho, North Carolina, Nevada, New Hampshire, Oregon, and Virginia.  *See* RJN, Exs. D – M.  The out-of-state plaintiffs cannot bring claims under California law.

These choice of law provisions are enforceable under California law, the law of the forum state in which this case was brought.  Plaintiffs filed this lawsuit in federal court invoking this Court's jurisdiction under the Class Action Fairness Act ("CAFA").  *See* Compl. ¶ 8.  Because CAFA is part of the diversity statute, a district court is considered to be exercising its diversity jurisdiction in CAFA actions.  *See* 28 U.S.C. § 1332; *see also Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (applying substantive law of forum state "[b]ecause CAFA is based on diversity jurisdiction"); *In re NVIDIA GPU Litig.*, 2009 WL 4020104, *5 (N.D. Cal. 2009).

In a diversity case, a district court applies the choice of law rules of the state in which it sits.  *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) ("In a diversity case, the district court must apply the choice-of-law rules of the state in which its sits.").  The Court's forum is California.  "California courts use the approach set out in the Restatement (Second) of Conflicts of Laws § 187(2), which 'reflect[s] strong policy considerations favoring the enforcement of freely negotiated choice of law clauses.'"  *Abat v. Chase Bank USA, N.A.*, — F. Supp. 2d —, 2010 WL 3632809, *1 (C.D. Cal. 2010) (citing *Wash. Mut. Bank, F.A. v. Super. Ct.*,

1  24 Cal.4th 906, 917-18 (2001) & *Nedlloyd Lines v. Super. Ct.*, 3 Cal.4th 459, 466 (1992)).

2  "Where there is a substantial relationship between the chosen state and the parties or transaction

3  at issue, California courts enforce choice of law provisions unless the party opposing the

4  enforcement of the provision shows that California has materially greater interest in applying its

5  own law and the chosen law would contravene California's fundamental public policy. *Abat*,

6  2010 WL 3632809, *1 (citing *Nedlloyd Lines*, 3 Cal.4th at 466).

7           There is a substantial relationship between the chosen states and the mortgage loan

8  secured by properties located in the various states. *See, e.g., Hallas v. Ameriquest Mortg. Co.*,

9  2005 WL 2044523, *4 (D. Or. 2005) (finding that Washington had the most significant

10  relationship to refinance loans because, among other things, the secured property was within that

11  state, the Deed of Trust was recorded in that state, the alleged injury occurred there, and the

12  foreclosure happened there). The secured properties are located in the states selected in the

13  various security instruments. The security instruments are recorded in those states. The defaults

14  occurred in those states. Given the substantial relationship, the choice of law provisions are

15  enforceable.

16           As a result, only the California plaintiffs have any potential claims under California law.

17  The claims of the other plaintiffs should be dismissed.

18  **V.      AN AGENT OF A PARTY TO A CONTRACT CANNOT INDUCE ITS BREACH**

19           Having dealt with overreaching deficiencies with plaintiffs' pleading, we can now focus

20  on the individual causes of action in the complaint. The third cause of action, the heart of this

21  case, is labeled "Inducing Breach of Contract." Here plaintiffs maintain that "ASC intentionally

22  induced Plaintiffs and members of the Class to default on their mortgage payments through its

23  practice and policy of willfully misrepresenting that defaulting on the loan was a prerequisite for

24  requesting a loan modification." Compl. ¶ 56.

25           The elements of inducement to breach of contract (known under California law as

26  intentional interference with contract) are: (1) a valid contract existed between the plaintiff and

27  another party; (2) the defendant had knowledge of the contract and intended to induce a breach

28  thereof; (3) the contract was breached; (4) as a proximate result of the defendant's wrongful or

-9-

1   unjustified conduct; and (5) resulting in damage to the plaintiff.  *See, e.g., Pac. Gas & Elec. Co.*

2   *v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990); *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10

3   (2009).

4            A party to a contract may not be held liable for this tort.  *See, e.g., Applied Equip. Corp. v.*

5   *Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 514 (1994) ("The tort duty not to interfere with the

6   contract falls only on strangers-interlopers who have no legitimate interest in the scope or course

7   of the contract's performance."); *Bear Stearns*, 50 Cal.3d at 1126 ("a stranger to a contract may

8   be liable in tort for intentionally interfering with the performance of the contract.").  "One

9   contracting party owes no general tort duty to another not to interfere with performance of the

10  contract; its duty is simply to perform the contract according to its terms."  *Applied Equip.*, 7

11  Cal.4th at 514.

12           Similarly, an agent or representative of a principal to a contract is also generally exempt

13  from any liability for interference with a contract.  *See, e.g., Mintz v. Blue Cross of California*,

14  172 Cal. App. 4th 1594, 1606 (2009) ("The only question is whether the representative of a

15  contracting party may be held liable for the substantive tort of interfering with the contract.  The

16  cases answer that question in the negative.") (citing *Shoemaker v. Myers*, 52 Cal.3d 1, 24-25

17  (1990); *PM Group, Inc. v. Stewart*, 154 Cal. App. 4th 55, 65 (2007) (neither "Stewart nor his

18  agents can be liable for the tort of interfering with the subcontracts" for concert performances by

19  Stewart)); *see also Jenkins v. Inglewood Unified Sch. Dist.*, 34 Cal. App. 4th 1388, 1395 (1995)

20  (holding that a demurrer to a cause of action for interference with contract properly sustained

21  without leave to amend where "the named defendants were agents or employees of the

22  contracting party [and] cannot be liable for contract interference."); *Unzipped Apparel, LLC v.*

23  *Sweet Sportswear, LLC*, 2010 WL 2677441, *68-*69 (Cal. Ct. App. 2010) (unpublished)

24  ("because Cole allegedly was acting as an agent of Candie's, MC, and IPH," "Cole cannot be

25  liable for interfering with contractual relationship between Candie's, MC, or IPH ….").

26           Plaintiffs describe the note holders of the loan contracts as ASC's "principals."  *See*

27  Compl. ¶¶ 54, 55.  Thus, plaintiffs concede that ASC was the agent of the note holders.  Plaintiffs

28  also allege that ASC was or is the loan servicer of their mortgage loans.  *See* Compl. ¶¶ 3, 54.  A

-10-

MOTION TO DISMISS
Case No.:  CV10-05321

1  loan servicer is an agent to a party to the loan contract (the owner of the loan).[5]  As an agent or

2  representative of a contracting party, ASC may not be held liable for interfering with the loan

3  contracts.  *See, e.g., Shoemaker*, 52 Cal.3d at 24-25; *Mintz*, 172 Cal. App. 4th at 1606; *PM*

4  *Group*, 154 Cal. App. 4th at 65; *see also Jenkins*, 34 Cal. App. 4th at 1395.

5        Plaintiffs apparently anticipate this rule and attempt to plead around it by maintaining that

6  "ASC acted independently of and antagonistically to the interests of its principal for its own

7  fraudulent and deceptive financial interests," as its purported misrepresentations to the plaintiffs

8  resulted "in increased revenue for ASC and a financial loss for their principals (i.e., note

9  holders/investors of the mortgages)."  Compl. ¶¶ 54-55.

10        This maneuver does not work.  The above cited case of *Mintz v. Blue Cross of California*,

11  172 Cal. App. 4th 1594 (2009) directly forestalls plaintiffs' interference claim against ASC.  In

12  *Mintz*, the court held that the claims administrator under a health insurance plan, acting as the

13  representative of the contracting party (the insurance company), could not be held liable for

14  interference in its principal's contract.  *Mintz*, 172 Cal. App. 4th at 1598, 1604.  The court

15  explained that, "In this case, Blue Cross is CalPERS's agent:  for purposes of claims

16  administration under the insurance contract between Mintz and CalPERS, Blue Cross was vested

17  with the power to act for CalPERS, and therefore cannot be held liable for interference with the

18  very contract it was charged with administering."  *Id*. at 1604.

19        The plaintiff in that case tried to get around the "agent's immunity rule" by alleging, as

20  plaintiffs in the present case do, that Blue Cross was "acting for its own financial advantage"

21  when it denied him coverage.  *Id*. at 1605.  The *Mintz* court rejected this approach noting that

22  "there is no 'financial advantage' exception to the rule that a corporate agent cannot be liable for

23

24        [5] *See, e.g., In re Mortg. Lenders Network USA, Inc*., 406 B.R. 213, 222 (Bankr. D. Del.
    2009) (finding that "Loan servicing is the process of administering borrowers' payments on their

25  loans. This process includes sending out billing statements, monitoring the loan accounts,
    collecting loan payments, administering taxes and insurance, handling delinquent loans, and

26  protecting property on behalf of the owner of the loans."); *see generally Michael D. v. GMAC
    Mortg., LLC*, — F. Supp. 2d —, 2011 WL 111236, *4-*5 (W.D. Mo. 2011) (describing the

27  relationship between a loan servicer and a loan owner); *Quach v. Citimortgage Inc*., 2010 WL
    3211937, *4-*5 (N.D. Cal. 2010) (explaining how "loan servicer" and "servicing" are defined by

28  RESPA); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1166 (2002).

-11-

interfering with its principal's contract ...." *Id.* at 1606.  Moreover, the *Mintz* court explained that the "agent's immunity rule" and its exceptions (such as when an agent places its interest ahead of the principal) apply only "to civil conspiracy claims," not to claims of interference with contracts.  *Id.*  The *Mintz* court therefore held that "Because the representative of a contracting party may not be held liable for the tort of interfering with its principal's contract, Mintz cannot state a cause of action against Blue Cross for intentional interference with contract rights."  *Id.* at 1607.

The holding of the *Mintz* court is well-grounded.  As it noted, "Every agent, in one way or another, acts for its own financial advantage when it acts for its principal," and therefore allowing a "financial advantage" exception would swallow the rule.  *Id.* at 1606.  Perhaps more importantly, allowing such tort claims where rights and obligations are governed by contract would tend to obliterate vital and established distinctions between contract and tort theories of liability.  *See, e.g., Applied Equip.*, 7 Cal.4th at 514-20.

ASC services (or administers) the loans on behalf of the note holders, and is vested with the power to act for the note holders.  It therefore cannot be held liable for interfering with the very contracts it is charged with servicing.

Accordingly, the third cause of action for inducing breach of contract fails to state a claim for relief as a matter of law.  It should be dismissed.

## VI.  THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING APPLIES ONLY TO THE PARTIES TO A CONTRACT AND CANNOT BE BASED ON A TORT THEORY

In their first cause of action, plaintiffs state that "ASC breached its duty of good faith and fair dealing by, *inter alia*, inducing Plaintiffs and members of the Class to breach their mortgage agreements by defaulting on their monthly mortgage payments, thereby subjecting Plaintiffs and members of the Class to substantial fees, interest, and penalties collected and retained by ASC."  Compl. ¶ 45.  Plaintiffs have neither a contract nor a tort-based claim for breach of the implied covenant of good faith and fair dealing.

-12-

### A.   Plaintiffs Have No Contract-Based Claim

#### 1.   ASC is not a Party to the Contracts

Plaintiffs do not have a viable contract-based action because they never allege that ASC is a party to the loan contracts. Nor does a review of the deeds of trust and mortgages reflect that ASC was a party to any of the contracts. It was not the lender, the beneficiary, the trustee, nor any other named entity in any of the security instruments. *See* RJN, Exs B-M.

The implied covenant of good faith and fair dealing applies only to the parties to the contract. *See, e.g., Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 349 (2000) (noting that the implied covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.") (emphasis original); *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995) (explaining that the implied covenant is meant "to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."); *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties ….."). "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant." *Smith*, 225 Cal. App. 3d at 49.

#### 2.   Any Contract-Based Claim is Insufficiently Pleaded

Moreover, to the extent this claim may have been intended to be based on a breach of contract, it is insufficiently pleaded. A contract-based claim for breach of the implied covenant cannot survive a motion to dismiss if it fails to "identif[y] any express provision [in the underlying contract] which has been frustrated by [the defendant's] conduct." *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010) (dismissing claim, in part, on these grounds). This is because the intent of the implied covenant is "'to protect the express covenants or promises of [a] contract.'" *Id*. (quoting *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008) (alteration original)). Thus, the covenant must "'rest[ ] upon the existence of some specific contractual obligation.'" *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1160 (E.D. Cal. 2010) (quoting *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App.

-13-

1  4th 1026, 1031-32 (1992)).  In other words, if the complaint fails to tether a defendant's alleged

2  covenantal breaches to particular contractual obligations, the claim for breach of the implied

3  covenant cannot stand.

4  Plaintiffs have not identified any express provision in either the promissory notes or

5  corresponding deeds of trust or mortgage that ASC violated.  There is then, no specific

6  contractual obligation on which to base this implied covenant claim.  *Cf. Benito v. Indymac*

7  *Mortg. Servs.*, 2010 WL 2130648, *7 (D. Nev. 2010) (granting summary judgment for defendant

8  on breach of covenant of good faith and fair dealing claim because "[n]o contract term in the

9  loans required [defendant] to engage in loan modification, and it would not breach the covenant

10  for [defendant] to refuse to take on an additional obligation it was not required to undertake in the

11  contract itself.").

12  **B.      Plaintiffs Have No Tort-Based Claim**

13  To the extent that this breach of implied covenant cause of action is premised on a tort, it

14  too fails.  In California, "the tort of breach of the covenant of good faith and fair dealing applies

15  only in the context of insurance contracts."  *Harris v. Wachovia Mortg., F.S.B.*, 185 Cal. App. 4th

16  1018, 1023 (2010).  No insurance contract is involved in this case.  The contracts forming the

17  basis of this action are "mortgage agreements and notes."  *See* Compl. ¶ 53.

18  And "Generally, no cause of action for the tortious breach of the implied covenant of good

19  faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary

20  characteristics.'"  *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002)

21  (applying California law).[6]  There is no special or fiduciary relationship between loan servicers

22  and borrowers.  *See, e.g., Quintero Family Trust v. OneWest Bank, F.S.B.*, 2010 WL 392312, *10

23  (S.D. Cal. 2010) ("servicers of the loan do not owe any fiduciary duties to the borrowers of the

24  ───────────────────

25  [6] *See also Thiel v. GMAC Mortg., LLC*, 2010 WL 3505087, *3 (E.D. Cal. 2010); *Bionghi v. Metro Water Dist.*, 70 Cal. App. 4th 1358, 1370 (1999) ("tort recovery for breach of the [implied] covenant [of good faith and fair dealing] is available only in limited circumstances,

26  generally involving a special relationship between the contracting parties ...."); *Careau & Co. v. Security Pac. Bus. Credit*, 222 Cal. App. 3d 1371, 1399 (1990) ("the recognition of a tort remedy

27  for a breach of the implied covenant in a noninsurance contract has little authoritative support .... [Most courts] ha[ve] rejected the recognition of a special relationship between specific

28  contracting parties").

-14-

1  loans they service."); *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1198 (E.D.

2  Cal. 2009) (citing cases).  Thus, there is no tort-based claim here.

3          Therefore, the first cause of action for breach of implied covenant should be dismissed.

4  **VII.    EQUITABLE ESTOPPEL IS NOT A CAUSE OF ACTION**

5          Plaintiffs' second cause of action is for equitable estoppel.  With this claim plaintiffs

6  contend that "Defendants should be equitably estopped from retaining any amounts collected

7  from Plaintiffs and the Class resulting from the false and misleading information given to

8  Plaintiffs and members of the Class."  Compl. ¶ 50.

9      **A.      Equitable Estoppel Is Not A Cause Of Action**

10         Equitable estoppel is not an affirmative theory of relief.  Equitable estoppel "acts

11  defensively only;" "[i]t cannot stand "as a separate cause of action."  *Money Store Inv. Corp. v.*

12  *S. Cal. Bank*, 98 Cal. App. 4th 722, 732 (2002) (citing *Pac. Gas & Elec. Co. v. Zuckerman*, 189

13  Cal. App. 3d 1113, 1144 (1987) (doctrine could not be used as an affirmative theory on which to

14  base the collection of royalties) & *Green v. Travelers Indem. Co.*, 185 Cal. App. 3d 544, 555

15  (1986)); *see also* 2 CAL. AFFIRMATIVE DEF. § 34:1 (2010 ed.) ("Older cases hold that the plaintiff

16  may assert the doctrine affirmatively in the complaint, while more recent cases reject the view

17  that equitable estoppel can stand on its own as a cause of action."); *Bailey v. Outdoor Media*

18  *Group*, 155 Cal. App. 4th 778, 790 (2007) ("The doctrine [of equitable estoppel] is defensive in

19  nature only ….").

20      **B.      By Intentionally Defaulting, Plaintiffs Cannot Invoke Equity**

21         Moreover, plaintiffs cannot seek equitable relief here because they have "unclean hands."

22  While plaintiffs never clarify exactly why they defaulted, the complaint suggests it was a strategic

23  decision on their part to appear eligible for loan modifications for which they were not actually

24  qualified.  When plaintiffs sought their loan modifications with ASC, "each Plaintiff and member

25  of the Class … were current on his or her monthly mortgage payments" and they were "in good

26  standing" on their loans.  Compl. ¶¶ 49, 53, 66.  They also assert that they "ceded their positions

27  of good standing [on their loans] only as a result of being instructed to do so by Defendants …."

28  *Id.* ¶ 50.  If it is true that plaintiffs would not have defaulted but for their desire to seek a loan

-15-

1   modification, this means they had the ability to continue making their loan payments as agreed.

2   If they had the ability to make their payments, they were not qualified for any loan modification

3   program.

4         In this event, plaintiffs intentionally defaulted in order to seek a loan modification when

5   they were otherwise able to make their payments as agreed, in order to take advantage of a loan

6   program designed for borrowers who truly could not repay their loans.  Therefore they cannot

7   invoke the aid of equity.  "The doctrine [that he who comes into Equity must come with clean

8   hands] demands that a plaintiff act fairly in the matter for which he seeks a remedy.  He must

9   come into court with clean hands, and keep them clean, or he will be denied relief, regardless of

10  the merits of his claim."  *Kendall-Jackson Winery, Ltd. v. Sup. Ct.*, 76 Cal. App. 4th 970, 978

11  (1999).

12        Another district court dealing with a nearly identical situation recognized that plaintiffs

13  cannot cloak themselves with equity when they intentionally ceased payments of their loans.  In

14  *Lawrence v. Aurora Loan Servs. LLC*, 2010 WL 364276, *1 (E.D. Cal. 2010), plaintiffs alleged

15  that their loan servicer would not consider a loan modification unless they were 60-90 days

16  behind on their loan payments.  In rejecting plaintiffs' equitable claims, the court explained that:

17              The key problem with plaintiffs' equity arguments is that they
              ignore that plaintiffs invited the problems they face.  Plaintiffs
18            stopped making their loan payments to seek a loan modification.
              Plaintiffs attempt to ignore conveniently their original loan
19            obligations.  Plaintiffs presuppose that Aurora was required to
              modify their loan. The FAC alleges no facts for such notion.
20            Plaintiffs are unable to cloak themselves with equity when they
              attempted to usurp their original loan.  Plaintiffs lost any equitable
21            hold with their intentional cease of payments.

22  *Id*. at *7.

23        The same appears true of plaintiffs here.  Plaintiffs apparently strategically defaulted

24  hoping to get better loan terms than those to which they originally agreed to.  Plaintiffs offer no

25  justification for their intentional breach.  Equity should therefore not hear their claims.

26        **VIII.   UNJUST ENRICHMENT IS NOT A CAUSE OF ACTION**

27        In their fourth cause of action, plaintiffs say that "ASC will be and has been unjustly

28  enriched at the expense of" plaintiffs due to ASC inducing them to breach their mortgage

-16-

1    agreement.  *Id*. ¶ 61.  According to plaintiffs, this fraudulent inducement resulted in ASC

2    collecting "fees, interest, and penalties" from the defaults.  *Id*. ¶¶ 61-63.

3    **A.    Unjust Enrichment Is Not A Cause Of Action**

4         Just as the equitable estoppel claim discussed in the prior section, "unjust enrichment" is

5    also not a cause of action.  *See McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004); *see also*

6    *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007).  It is a legal general

7    principle, underlying various legal doctrines and remedies, rather than a remedy itself.  *See*

8    *Melchior v. New Line Prods., Inc*., 106 Cal. App. 4th 779, 793 (2003); *see also Jogani v. Sup. Ct.*,

9    165 Cal. App. 4th 901, 911 (2008).

10
     **B.    As The Late Fees Were Governed By Express Contract, No Quasi-**
11   **Contractual Relief Lies**

12        Beyond this point, the principle of "unjust enrichment" has no application here because

13   any fees, interest, and penalties resulting from plaintiffs' defaults were governed by the express

14   terms of the promissory notes and security instruments.  "Under . . . California . . . law, unjust

15   enrichment is an action in quasi-contract, which does not lie when an enforceable, binding

16   agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v. Gen. Elec. Capital*

17   *Corp*., 96 F.3d 1151, 1167 (9th Cir. 1996) (citing *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605,

18   613 (1975)).  If plaintiffs were charged any fees, interest, or penalties not owed under these

19   contracts, they may have a claim for breach of contract; they do not have any quasi-contractual

20   relief.

21        Plaintiffs have stated no claim for relief based on "unjust enrichment."  This cause of

22   action should be dismissed.

23   **IX.    PLAINTIFFS HAVE NO VIABLE UCL CLAIM**

24        The fifth and final cause of action is asserted under the auspices of California Business

25   and Professions Code § 17200, also commonly referred to as the Unfair Competition Law

26   ("UCL").  Plaintiffs aver that "ASC has engaged in unfair and fraudulent business practices by

27   inducing mortgage borrowers who were current on their mortgage payments to default on their

28

-17-

1  mortgage payments" by fraudulently informing borrowers that "they are not eligible for such

2  modification until they default on their mortgage payments."  Compl. ¶ 66.

3        **A.**     **Only The California Plaintiffs Have Any Potential Claim UCL Claim**

4        Section 17200 is, of course, a California-specific statute.  Only three of the plaintiffs have

5  secured properties in this state.  The remainder are non-California residents who signed deeds of

6  trusts or mortgages designating the law of other states as governing.  *See* RJN, Exs. B-M.  The

7  non-California residents, therefore, may not seek relief under California law given the choice of

8  law provisions in their loan contracts.

9        **B.**     **Plaintiffs Have Not Alleged Facts Showing Causation Or Reliance**

10        As for the three California residents, Keith and Ying Forster and Michelle Wilkinson, they

11  have not alleged facts establishing they have any relief under section 172000.  To state a section

12  17200 claim, a plaintiff must allege facts showing causation and reliance.  *See Kwikset Corp. v.*

13  *Superior Court*, — Cal.4th —, 2011 WL 240278, *8 (2011).  Under section 17200, a plaintiff

14  must have: (1) "suffered injury in fact" and (2) "lost money or property *as a result of*" the alleged

15  unfair competition.  *See* Cal. Bus. & Prof. Code § 17204 (emphasis added).  "The phrase 'as a

16  result' in its plain and ordinary sense means 'caused by' and requires a showing of causal

17  connection or reliance on the alleged [unfair competition]."  *Hall v. Time*, 158 Cal. App. 4th 847,

18  855 (2008).  "Consequently, 'a plaintiff must show that the misrepresentation [*i.e.*, the unfair

19  competition] was an immediate cause of the injury-producing conduct ....'"  *Kwikset Corp.*, 2011

20  WL 240278, *8 (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)).

21        Throughout the pleading are numerous allegations that ASC stated to plaintiffs that they

22  needed to be in default to apply for a loan modification.  Without elaboration, plaintiffs claim that

23  this "induced" them to default or "caused" them to default.  But it does not automatically follow

24  that a borrower who is told that being in default is a criteria for a loan modification will thereafter

25  default.  Plaintiffs' defaults may have come after ASC's supposed statement, but it was not the

26  immediate cause of the defaults.

27        If an analogy may be indulged, it may help to illustrate the plaintiffs' causation problem.

28  Let us suppose that A tells B that the only way to get money out of the bank vault is to rob the

1  bank.  We would normally reject any assertion by B that A's statement induced him or caused

2  him to rob the bank.  Having decided to try to get money out of the bank, B may have utilized A's

3  statement in pursuing his course of action, but A's statement did not cause or induce B to pursue

4  the course of action in the first place.  If B robs the bank to get at the money in the vault, it is B

5  that is responsible.

6      Likewise, plaintiffs' defaults were not caused by anything ASC said.  If plaintiffs were

7  able to make their loan payments, as they allege, then their defaults were caused by their strategic

8  decision to exploit loan modification programs.  If plaintiffs were unable to make their loan

9  payments, their defaults were caused by their economic circumstances.

10      In short, plaintiffs have not alleged facts showing that ASC's supposed misrepresentation

11  about the eligibility requirements of HAMP or other programs was the immediate cause of their

12  defaults.  Because plaintiffs omit critical steps in the chain of events, they have omitted any facts

13  demonstrating causation or reliance.  Without such facts, plaintiffs cannot state a claim for relief

14  under section 17200.

15      **C.**   **Plaintiffs Have Not Alleged Facts Showing They Have Any Restitution
16             Remedy Under The UCL**

17      Plaintiffs have also failed to allege facts showing they are entitled to the relief they seek

18  under the UCL.  "The remedies available under the UCL are limited to injunctive, restitutionary

19  and related relief …."  *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1015 (2010) (citations

20  omitted).  In this case, "Plaintiffs seek restitution to recover all money paid to ASC by Plaintiffs

21  and members of the Class for fees, interest, and penalties …."  Compl. ¶ 68.

22      "[T]he notion of restoring something to a victim of unfair competition includes two

23  separate components. The offending party must have obtained something to which it was not

24  entitled *and* the victim must have given up something which he or she was entitled to keep."  *Day*

25  *v. AT&T*, 63 Cal. App. 4th 325, 340 (1998) (emphasis original).  The second component is absent

26  here.

27      Plaintiffs acknowledge that they ceased making timely payments on their mortgages.

28  Each plaintiff signed a deed of trust or security instrument that provided that "Borrower shall pay

-19-

MOTION TO DISMISS
Case No.:  CV10-05321

when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges *and late charges due* under the Note." RJN, Exs. B – M, § 1 (emphasis added). In other words, plaintiffs agreed that if they did not make payments when due, they would be assessed late charges. Under the terms of their contracts, plaintiffs are contractually obligated to pay late charges; they are not entitled to keep these sums of money. Plaintiffs cannot seek restitution of monies they contractually agreed to pay, as plaintiffs were not "entitled to keep" these late charges. They therefore have no right to the relief they seek under section 17200.

### D. There Is No Underlying Unlawful Act To Support A Derivative "Unlawful Prong" UCL Claim

In addition to these general points, the UCL claim fails on the particulars. Section 17200 prohibits "unlawful, unfair, or fraudulent business act[s] or practice[s]." CAL. BUS. & PROF. CODE § 17200. Plaintiffs are attempting to state a claim under each prong.

Plaintiffs base their "unlawful prong" claim on their prior causes of action for "breach of the covenant of good faith and fair dealing and unjust enrichment." Compl. ¶ 67. As discussed in connection with these other causes of action, plaintiffs have not pleaded any viable underlying violation of law that would support a derivative UCL action. *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). Because section 17200 requires an underlying violation of law, a defense to the predicate claim is a defense to the alleged violation of the UCL. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.") (quotation marks omitted); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (the viability of a UCL claim stands or falls with the antecedent substantive causes of action); *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 673 (1998) (a defense to the underlying offense is a defense under the UCL); *see also Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (dismissing § 17200 claim where underlying negligence and fraud claims were insufficient as a matter of law). Plaintiffs have not stated a claim for relief for either breach of the implied covenant or unjust enrichment. They have therefore not identified any unlawful conduct on which to premise a section 17200 action.

-20-

**E.    Plaintiffs Have Not Alleged The Violation Of A Specific Constitutional Provision, Statute, Or Regulation To Support An "Unfair Prong" Claim**

Plaintiffs also invoke the "unfair" and "fraudulent" prongs of section 17200 by maintaining that "ASC has engaged in unfair and fraudulent business practices by inducing mortgage homeowners who were current on their mortgage payments to default on their mortgage payments in breach of their mortgage agreements."  Compl. ¶ 66.

The standard for determining what is an "unfair" business practice in consumer actions under section 17200 is currently unsettled.[7]  Courts have applied three different standards in assessing claims brought under the "unfair" prong of the UCL.  These are the "balancing,"[8] the "tether," and the "FTC"[9] tests.  The continuing viability of the "balancing" test, even in consumer actions, it not clear in light of the California Supreme Court's holding in *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tele. Co*., 20 Cal.4th 163 (1999).[10]  The Ninth Circuit appears to have rejected the application of the "FTC test" in consumer actions.[11]

---

[7] *See, e.g., Lozano v. AT&T Wireless Servs., Inc*., 504 F.3d 718, 735-36 (9th Cir. 2007) ("The California courts have not yet determined how to define "unfair" in the consumer action context after *Cel-Tech* [*Commc'ns., Inc. v. Los Angeles Cellular Tele. Co*., 20 Cal.4th 163 (1999)]."); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 877 n.5 (N.D. Cal. 2010).

[8] Under the older "balancing" standard, courts "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *State Farm Fire & Cas. Co. v. Sup. Ct.*, 45 Cal. App. 4th 1093, 1104 (1996).

[9] The "FTC" test is derived from section 5 of the FTC Act.  *See Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1402-03 (2006).  The factors which define "unfairness" under section 5 of the FTC Act are:  "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to the consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Jordan v. Paul Fin., LLC*, — F. Supp. 2d —, 2010 WL 3892261, *11 (N.D. Cal. 2010) (quoting *Zlotnik v. U.S. Bancorp*, 2009 WL 5178030, *5 (N.D. Cal. 2009)).

[10] *See, e.g., Churchill Village, L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1130, n.10 (N.D. Cal. 2000) ("Although the California Supreme Court declined to extend its holding [in *Cel-Tech*] to consumer actions, the lack of distinction between competitor and consumer in the language of the UCL renders this definition equally valid in the consumer context."); *Scripps Clinic v. Sup. Ct*., 108 Cal. App. 4th 917, 940 (2003) (finding that *Cel-Tech* narrowed the meaning of "unfair" in consumer cases).

[11] *See Lozano*, 504 F.3d at 736.

1      This leaves the "tether" standard, widely used by California courts in recent years[12] and

2  more in line with the California Supreme Court's reasoning in *Cel-Tech* than the "balancing"

3  test.[13]   Under the "tether" standard, "any claims of unfairness under the UCL should be defined in

4  connection with a legislatively declared policy."  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144,

5  1166-67 (2000); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002)

6  (reading "*Cel-Tech* to require that the public policy which is a predicate to the action must be

7  'tethered' to specific constitutional, statutory, or regulatory provisions."); *Alch. v. Sup. Ct.*, 122

8  Cal. App. 4th 339, 403 (2004).

9      Plaintiffs have not alleged that the supposed unfair business practice violates a declared

10  public policy tethered to a particular constitutional, statutory, or regulatory provision.  Instead,

11  ASC's purported practice is alleged to violate various common law obligations—for instance,

12  contractual obligations or obligations implied with contracts.  However, "given the Supreme

13  Court's disapproval of *State Farm*'s 'amorphous' definition of 'unfair' practices and its focus on

14  legislatively declared public policy, reliance on general common law principles to support a cause

15  of action for unfair competition is unavailing."  *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of*

16  *Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004).  Telling borrowers that being in default is

17  prerequisite to a loan modification did not violate a codified public policy.

18      Besides not falling within the meaning of "unfair" as construed by appellate courts, what

19  plaintiffs describe in their complaint is not "unfair" even in a general sense.  Plaintiffs say they

20  "ceded their positions of good standing only a result of being instructed to do so by Defendants."

21  It appears that plaintiffs deliberately ceased making their loan payments to exploit loan

22  modification programs created to help truly struggling borrowers.  Plaintiffs therefore could have

23

24      [12] *See, e.g., Alch. v. Sup. Ct.*, 122 Cal. App. 4th 339, 403 (2004); *Gregory v. Albertson's,*
*Inc.*, 104 Cal. App. 4th 845, 854 (2002); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166-67

25  (2000).

26      [13] *See, e.g., Sanchez v. Bear Stearns Residential Mortg. Corp.*, 2010 WL 1911154, *7
(S.D. Cal. 2010) ("This Court finds that the 'tether' test is more in line with the California

27  Supreme Court's reasoning in *Cel-Tech*.  The *Cel-Tech* court found, and this Court agrees, that
the balancing test to determine unfairness is 'too amorphous and provide[s] too little guidance to

28  the courts.").

-22-

1   avoided their alleged injuries—late fees, interest, and charges—by making their monthly

2   payments in accordance with their loan contracts.  *Cf. Lawrence v. Aurora Loan Servs. LLC*, 2010

3   WL 364276, *4 (E.D. Cal. 2010) ("[P]laintiffs invited the problems they face.  Plaintiffs stopped

4   making their loan payments to seek a loan modification."); *Davis v. Ford Motor Credit Co.*, 179

5   Cal. App. 4th 581, 598 (2009) (holding that debtor did not make out a claim for "unfair" business

6   practices where debtor could have avoided the imposition of late fees "had [he] made his monthly

7   payments timely, or within the 10-day grace period, in accordance with his obligations under the

8   contract.").

9       As it appears that plaintiffs chose to default in a calculated manner and without a

10  justifiable reason, they can hardly complain that the resulting late fees were "unfair."

11       **F.      Plaintiffs Have Not Sufficiently Pleaded Fraud Or Reliance To Support A**
12              **"Fraud Prong" Claim**

13       Finally, we reach section 17200's fraud prong.  The defect with this aspect of the claim is

14  a matter of pleading.  Section 17200 claims sounding in fraud must meet the heightened pleading

15  requirement of Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009);

16  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003).  Under Rule 9(b), "[i]n

17  alleging fraud …, a party must state with particularity the circumstances constituting fraud …."

18  To meet this standard, the complaint must allege "particular facts going to the circumstances of

19  the fraud, including time, place, persons, statements made and an explanation of how or why such

20  statements are false or misleading."  *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, *3

21  (N.D. Cal. 2007) (citing *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994)

22  (en banc)); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th

23  Cir. 1986) (noting that under Rule 9(b) "the pleader must state the time, place, and specific

24  content of the false representations as well as the identities of the parties to the

25  misrepresentation.").

26       And where a plaintiff is relying upon the "fraudulent" prong of section 17200, he or she

27  must also plead and prove actual reliance.  *See In re Tobacco II Cases*, 46 Cal.4th 298, 328

28  (2009); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1257 (2009).

-23-

1    Neither fraud nor reliance is sufficiently pleaded in the complaint.  As for pleading fraud

2  with particularity, the complaint offers no specific statement made by anyone at ASC, their

3  identity, when the supposed statement about needing to be in default was made, where it was

4  made, or how or why it induced plaintiffs to cease making their mortgage payments.  And the

5  complaint is completely silent about reliance.  As explained more thoroughly above, plaintiffs

6  never say why they defaulted.  Because plaintiffs strive so hard to portray themselves as actors

7  without volition they never explain how they went from being told that default is a requirement to

8  actually making the decision to default.  Without this, there are no facts from which to infer

9  reliance.

10    As a result, the fifth cause of action should be dismissed.

11    **X.    DEFENDANT WELLS FARGO & CO. SHOULD BE DISMISSED**

12    One final matter needs to be addressed.  The complaint includes a defendant, Wells Fargo

13  & Co., against whom there is not a single discernable allegation of wrongdoing.  All allegations in

14  the complaint are directed toward the purported conduct of Wells Fargo Bank, N.A. (via either its

15  division Wells Fargo Home Mortgage or its d/b/a America's Servicing Company).  It appears that

16  plaintiffs are suing Wells Fargo & Co. merely in its capacity as Wells Fargo Bank, N.A.'s parent.

17  *See* Compl. ¶ 24.  That is not a proper basis for liability.

18    It is a "fundamental principle of corporate law that the parent corporation and its

19  subsidiary are to be treated as separate and distinct legal persons . . . ."  *Current, Inc. v. State Bd.*

20  *of Equalization*, 24 Cal. App. 4th 382, 391 (1994); *see also United States v. Bestfoods*, 524 U.S.

21  51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and

22  legal systems' that a parent corporation … is not liable for the acts of its subsidiaries.").  There

23  are exceptions to the general rule, such as the agency or alter ego theories, but plaintiffs have not

24  alleged facts supporting vicarious liability under either.  Indeed, the complaint does not state a

25  single fact against Wells Fargo & Co.  Plaintiffs suggest no basis for holding Wells Fargo & Co.

26  liable for the actions of another defendant.  A parent or affiliate corporation is not ordinarily liable

27  for wrongs committed by a different corporation, just as one individual usually is not liable for

28

-24-

another's torts.  As there is no other basis for holding Wells Fargo & Co. liable, it should be dismissed from this action.

## XI.    CONCLUSION

For the reasons stated above, defendants Wells Fargo & Co. and ASC respectfully submit that plaintiffs' complaint against them should be dismissed for failure to state any claim for relief.


DATED:  February 7, 2011

SEVERSON & WERSON
A Professional Corporation


By: _____ /s/   _Jon D. Ives_____
              Jon D. Ives

Attorneys for Defendants
Wells Fargo & Co. and Wells Fargo Bank, N.A.
(sued also as Wells Fargo Home Mortgage, Inc.)

-25-